UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

| | |
|---|---|
| MAGDALENA PLACENCIO | CIVIL ACTION NO. 6:17-cv-01433 |
| VERSUS | MAGISTRATE JUDGE HANNA |
| PROGRESSIVE PALOVERDE INSURANCE COMPANY, ET AL. | WITH CONSENT OF THE PARTIES |

## MEMORANDUM  RULING

Currently pending is the motion for summary judgment that was filed by the defendant, Progressive Paloverde Insurance Company.  (Rec. Doc. 25).  The motion is opposed.  Oral argument was held on January 24, 2019.  Considering the evidence, the law, and the arguments of the parties, and for the reasons fully explained below, the motion is GRANTED IN PART and DENIED IN PART.

## Background

On March 25, 2016, the plaintiff was allegedly injured in a motor vehicle accident that occurred in St. Landry Parish, Louisiana.  The plaintiff contends that she was a passenger in a vehicle that was owned by Genesis Learning Center, LLC, being driven by Francisca Placencio-Santos, and insured by Progressive under Commercial Auto Policy No. 04474596-8, which was issued to Genesis.  The other vehicle involved in the accident was allegedly owned by Ravin Renee Savoy, being driven by Kaylan Malik Coleman, and insured by Progressive under a different automobile insurance policy.

The plaintiff asserted a claim under Ms. Savoy's insurance policy, alleging that the accident occurred due to the sole fault of Ms. Coleman, the driver of Ms. Savoy's vehicle at the time of the accident. That claim, sometimes referred to hereinafter as "the liability claim," was ultimately settled. The plaintiff also asserted a claim for uninsured/underinsured motorist ("UM") coverage under the policy that was issued to Genesis. Progressive refers to such circumstances, in which a liability claim is asserted under a Progressive policy and a UM claim is asserted under a different Progressive policy following a single motor vehicle accident, as a "dual loss scenario."[1]

The UM claim is the focus of this lawsuit. Not only does the plaintiff seek the recovery of UM benefits under the policy, she also seeks the recovery of penalties, attorneys' fees, and court costs under La. R.S. 22:1973 and/or 22:1892, alleging that Progressive acted in bad faith by failing to promptly pay her UM claim.

In support of the instant motion for summary judgment, Progressive argued that the plaintiff's UM claim should be dismissed because the plaintiff breached the cooperation clause of the insurance policy that was issued by Progressive to Genesis, under which she is seeking UM coverage. In her opposition brief, the plaintiff argued that she did not breach the cooperation clause of the policy under which she

---

[1]     Rec. Doc. 32-1 at 2.

is seeking UM coverage because she had submitted to Progressive all of the information necessary to evaluate her UM claim when she dealt with Progressive in its capacity as the liability insurer of the other vehicle involved in the accident. Progressive responded to the plaintiff's argument by establishing (a) that different adjusters handled the liability claim and the UM claim and (b) that a Progressive adjuster handling a UM claim is not authorized to obtain copies of the medical records produced during the adjustment of claims under other Progressive policies.

The following facts are undisputed:

Through her counsel, Ms. Placencio promptly notified Progressive of the accident and sought to recover under the automobile liability insurance policy issued by Progressive to Ms. Savoy.[2]  That claim, which was assigned Claim No. 16-4214959,[3] was ultimately settled,[4] and Ms. Placencio's lawsuit against Ms. Savoy and Ms. Coleman was dismissed.[5]

In correspondence to Progressive with regard to negotiating a settlement of the liability claim,[6] the plaintiff's counsel stated that the plaintiff wished to reserve

---

[2]     Rec. Doc. 27-1 at 5.

[3]     Rec. Doc. 27-2 at 1,

[4]     Rec. Doc. 27-15.

[5]     The suit on the liability claim was dismissed on May 31, 2017.  Rec. Doc. 27-16.

[6]     Rec. Doc. 27-5 at 7 (letter to Progressive dated January 12, 2017); Rec. Doc. 27-7 at 2 (letter to Progressive dated January 27, 2017); Rec. Doc. 27-8 at 1 (letter to Progressive dated January 31, 2017); Rec. Doc. 27-10 at 2 (letter to Progressive dated February 6, 2017); Rec. Doc.

any UM claim that might have under her own automobile insurance policy. However, there is no evidence in the record establishing that the plaintiff's counsel identified Progressive as Ms. Placencio's UM insurer or identified the Progressive policy issued to Genesis as the policy under which she was seeking to recover UM benefits.

On or before February 21, 2017, the claimant's counsel sent a letter of representation to Progressive, notifying the company of the UM claim. That letter is not in the record, but Progressive's response,[7] dated February 21, 2017 and authored by Progressive UM adjuster Jay Toddy, acknowledged receipt of the letter and requested certain information. Progressive assigned Claim No. 17-5508647 to the UM claim.[8]

The insurance policy that was issued to Genesis, under which Ms. Placencio seeks UM coverage, contains the following language regarding duties in the event of an accident or loss:

A person seeking coverage must:
1.     cooperate with us [Progressive] in any matter concerning a claim or lawsuit;

---

27-12 at 1 (letter to Progressive dated February 13, 2017); Rec. Doc. 27-15 (letter to Progressive dated April 10, 2017); Rec. Doc. 27-16 at 2 (partial motion and order to dismiss the suit against Ms. Savoy, et al., with prejudice).

[7]     Rec. Doc. 27-13 t 1.

[8]     Rec. Doc. 27-13 at 1.

2.      provide any written proof of loss we [Progressive] may reasonably require;

3.      allow us [Progressive] to take signed and recorded statements, including sworn statements and examinations under oath. . . .

***

7.      authorize us to obtain medical and other records. . . .[9]

On February 22, 2017, Progressive issued its first reservation-of-rights letter regarding the UM claim.[10]  The letter quoted the portion of the insurance policy that lists the insured's duties in case of an accident or loss and expressly requested that Ms. Placencio provide a recorded statement to assist in Progressive's coverage investigation.  As noted above, the insurance policy states that, in the event of an accident or loss, a person seeking coverage must cooperate with Progressive, must allow Progressive to take signed and recorded statements, including sworn statements and examinations under oath, and must authorize Progressive to obtain medical and other records.[11]

That same day, the plaintiff's counsel e-mailed Mr. Toddy and stated that Ms. Placencio was "under no obligation whatsoever" to give a recorded statement.[12]

---

[9]      Rec. Doc. 25-3 at 6.

[10]     Rec. Doc. 25-6 at 26-27.

[11]     Rec. Doc. 25-3 at 6.

[12]     Rec. Doc. 25-5 at 1.

However, to demonstrate her client's willingness to assist Progressive, the e-mail requested that Mr. Toddy provide any questions in writing.[13]

On February 23, 2017, Mr. Toddy e-mailed a list of thirteen questions regarding the UM claim to the plaintiff's counsel.[14]

On March 16, 2017, Mr. Toddy sent an e-mail to the plaintiff's counsel, asking that the plaintiff provide answers to the written questions previously provided as well as other information including a copy of itemized medical bills and medical narratives related to the plaintiff's claimed injuries.[15]

On March 24, 2017, Progressive issued its second reservation-of-rights letter.[16] The letter again quoted the policy's requirements of an insured in the event of an accident or loss and requested a recorded statement from Ms. Placencio.

On May 4, 2017, Progressive issued its third reservation-of-rights letter.[17] The relevant policy provision was again quoted, a recorded statement was requested, and answers to the written questions provided by e-mail was also requested.

---

[13]     Rec. Doc. 25-5 at 1.

[14]     Rec. Doc. 25-7 at 1.

[15]     Rec. Doc. 25-8 at 1.

[16]     Rec. Doc. 25-6 at 23-24.

[17]     Rec. Doc. 25-6 at 19-21.

On May 31, 2017, the suit against Ms. Savoy and Ms. Coleman was dismissed.[18]

On June 7, 2017, Progressive issued its fourth reservation-of-rights letter.[19] The letter again quoted the relevant policy provision, again requested that Ms. Placencio give a recorded statement, and again requested Ms. Placencio's answers to the written list of questions previously provided.

On July 7, 2017, Progressive issued its fifth reservation-of-rights letter.[20] The policy provision was again quoted, a recorded statement was again requested, and Ms. Placencio's answers to Progressive's written questions was again requested.

On August 15, 2017, Progressive issued its sixth reservation-of-rights letter.[21] This letter again quoted the policy language regarding an insured's duties in the event of an accident, claim, loss, or suit, requested that Ms. Placencio give a recorded statement, and requested Ms. Placencio's answers to the written list of questions previously provided to her counsel.

---

[18]     Rec. Doc. 27-16.  The plaintiff contends that the lawsuit against Ms. Savoy, Ms. Coleman, and Progressive was filed on February 3, 2017 (Rec. Doc. 27 at 8) but no documentary evidence corroborating that contention was located in the record.

[19]     Rec. Doc. 25-6 at 16-17.

[20]     Rec. Doc. 25-6 at 13-14.

[21]     Rec. Doc. 25-6 at 9-11.

On August 17, 2017, the plaintiff's counsel sent a settlement demand letter to Mr. Toddy at Progressive, summarizing her injuries and demanding full policy limits of $100,000.[22]

On August 24, 2017, Progressive issued its seventh reservation-of-rights letter.[23] The insured's duties in the event of an accident or loss were again quoted, an examination under oath was requested, and several documents were requested, including signed medical authorizations, medical records for the past seven years, work records for the past seven years, a copy of settlements payments and releases executed in this matter, an affidavit from the owner and operator of the vehicle, and a copy of medical bills and records concerning the injuries sustained in the accident.

On September 5, 2017, the plaintiff's counsel provided medical authorization forms to Progressive via e-mail.[24] One was a Progressive-supplied medical authorization that did not contain the last four digits of the plaintiff's social security number and was executed by the plaintiff's counsel rather than by the plaintiff.[25] The other authorizations were signed by the plaintiff and dated September 1, 2017

---

[22]     Rec. Doc. 27-17 at 1-6.

[23]     Rec. Doc. 25-6 at 5-7.

[24]     Rec. Doc. 27-19 at 1.

[25]     Rec. Doc. 25-2 at 4 (affidavit of Belinda Merritt).

but only authorized the release of records for treatment dates after the date of the accident.[26]

On September 6, 2017, Mr. Toddy sent an e-mail to the plaintiff's counsel in which Progressive requested the plaintiff's permission to obtain and access all prior injury claims Ms. Placencio had made with Progressive for the past seven years.[27]

On September 22, 2017, Progressive issued its eighth reservation-of-rights letter.[28] This letter again quoted the policy provision regarding an insured's duties in the event of an accident or loss, and it requested that Ms. Placencio be examined under oath.

On that same date, September 22, 2017, the plaintiff's counsel authorized Progressive to obtain any prior medical records found in the plaintiff's prior claims with Progressive, and Progressive immediately requested the prior claim records.[29]

On September 29, 2017, the plaintiff filed this lawsuit.

Before filing suit, the plaintiff did not provide a recorded statement, did not respond to the written questions e-mailed to her attorney by Progressive, and did not provide an examination under oath.

---

[26]     Rec. Doc. 25-2 at 4 (affidavit of Belinda Merritt).

[27]     Rec. Doc. 25-10 at 1.

[28]     Rec. Doc. 25-6 at 2-3.

[29]     Rec. Doc. 25-2 at 4 (affidavit of Belinda Merritt).

The liability claim was handled by Progressive adjusters Ashley Zelaya and Joel Langford.[30] The UM claim was handled by Progressive adjusters Jay Toddy and Belinda Merritt.[31]

## Law and Analysis

### A. Summary Judgment Standard

Under Rule 56(a) of the Federal Rules of Civil Procedure, summary judgment is appropriate when there is no genuine dispute as to any material fact, and the moving party is entitled to judgment as a matter of law. A fact is material if proof of its existence or nonexistence might affect the outcome of the lawsuit under the applicable governing law.[32] A genuine issue of material fact exists if a reasonable jury could render a verdict for the nonmoving party.[33]

The party seeking summary judgment has the initial responsibility of informing the court of the basis for its motion and identifying those parts of the

---

[30]    See, e.g., Rec. Doc. 27-1 at 1, 5; Rec. Doc. 27-5 at 1; Rec. Doc. 27-6 at 1.

[31]    See, e.g., Rec. Doc. 25-2 at 1, Rec. Doc. 25-6 at 26-27, Rec. Doc. 25-7, Rec. Doc. 27-13.

[32]    *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Sossamon v. Lone Star State of Tex.*, 560 F.3d 316, 326 (5th Cir. 2009); *Hamilton v. Segue Software, Inc.*, 232 F.3d 473, 477 (5th Cir. 2000).

[33]    *Brumfield v. Hollins*, 551 F.3d 322, 326 (5th Cir. 2008) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 252); *Hamilton v. Segue Software, Inc.*, 232 F.3d at 477.

record that demonstrate the absence of genuine issues of material fact.[34]   If the

moving party carries its initial burden, the burden shifts to the nonmoving party to

demonstrate the existence of a genuine issue of a material fact.[35]   All facts and

inferences are construed in the light most favorable to the nonmoving party.[36]

If the dispositive issue is one on which the nonmoving party will bear the

burden of proof at trial, the moving party may satisfy its burden by pointing out that

there is insufficient proof concerning an essential element of the nonmoving party's

claim.[37]   The motion should be granted if the nonmoving party cannot produce

evidence to support an essential element of its claim.[38]

**B.**     **Louisiana Law Applies**

A federal court sitting in diversity must apply state substantive law and federal

procedural law.[39]   Because this Court has subject-matter jurisdiction over this action

under 28 U.S.C. § 1332, this is a diversity case and Louisiana's substantive law must

---

[34]      *Washburn v. Harvey*, 504 F.3d 505, 508 (5th Cir. 2007) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).

[35]      *Washburn v. Harvey*, 504 F.3d at 508.

[36]      *Brumfield v. Hollins*, 551 F.3d at 326 (citing *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986)).

[37]      *Norwegian Bulk Transport A/S v. International Marine Terminals Partnership*, 520 F.3d 409, 412 (5th Cir. 2008) (citing *Celotex Corp. v. Catrett*, 477 U.S. at 325).

[38]      *Condrey v. Suntrust Bank of Ga.*, 431 F.3d 191, 197 (5th Cir. 2005).

[39]      *Erie R. R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938); *Gasperini v. Ctr. for Humanities, Inc.*, 518 U.S. 415, 427 (1996); *Coury v. Moss*, 529 F.3d 579, 584 (5th Cir. 2008).

be applied.[40]  To determine Louisiana law, federal courts look to the final decisions of the Louisiana Supreme Court.[41]  When the state's highest court has not decided an issue, the court must make an "*Erie* guess" as to how the state supreme court would decide the issue.[42]  In making such a guess, the federal court may rely upon state appellate court decisions, unless persuasive data convinces the court that the state supreme court would decide the issue differently.[43]  When making an *Erie* guess concerning Louisiana law, the Fifth Circuit relies upon "(1) decisions of the [Louisiana] Supreme Court in analogous cases, (2) the rationales and analyses underlying [Louisiana] Supreme Court decisions on related issues, (3) dicta by the [Louisiana] Supreme Court, (4) lower state court decisions, (5) the general rule on the question, (6) the rulings of courts of other states to which [Louisiana] courts look when formulating substantive law and (7) other available sources, such as treatises and legal commentaries."[44]

---

[40]    See, e.g., *Moore v. State Farm Fire & Cas. Co.*, 556 F.3d 264, 269 (5th Cir. 2009).

[41]    *Moore v. State Farm Fire & Casualty Co.*, 556 F.3d at 269.

[42]    *Temple v. McCall*, 720 F.3d 301, 307 (5th Cir. 2013); *Moore v. State Farm Fire & Casualty Co.*, 556 F.3d at 269.

[43]    *Guilbeau v. Hess Corporation*, 854 F.3d 310, 311-12 (5th Cir. 2017); *Temple v. McCall*, 720 F.3d at 307; *Mem'l Hermann Healthcare Sys., Inc. v. Eurocopter Deutschland, GMBH*, 524 F.3d 676, 678 (5th Cir. 2008).

[44]    *Gulf and Mississippi River Transp. Co., Ltd. v. BP Oil Pipeline Co.*, 730 F.3d 484, 488–89 (5th Cir. 2013) (quoting *Am. Int'l Specialty Lines Ins. Co. v. Rentech Steel, L.L.C.*, 620 F.3d 558, 564 (5th Cir. 2010) (quoting *Hodges v. Mack Trucks, Inc.*, 474 F.3d 188, 199 (5th Cir. 2006))).

C.      **Interpretation of an Insurance Policy**

Under Louisiana law, an insurance policy is a contract between the parties and should be construed using the general rules of interpretation of contracts set forth in the Louisiana Civil Code.[45]  The role of a court interpreting the terms and provisions of an insurance policy is to determine the common intent of the parties.[46]  "If the policy wording at issue is clear and unambiguously expresses the parties' intent, the insurance contract must be enforced as written."[47]

D.      **The Cooperation Clause**

Many insurance policies, like the one at issue in this lawsuit, contain clauses requiring the insured to cooperate with the insurer in providing information relevant to the insured's claim.  A cooperation clause protects the insurer against fraud by enabling it to obtain relevant information concerning the claimed loss while the information is fresh.[48]  "The underlying purpose of a cooperation clause is to allow

---

[45]      *Cadwallader v. Allstate Ins. Co.*, 02–1637 (La. 06/27/03), 848 So.2d 577, 580; *La. Ins. Guar. Ass'n v. Interstate Fire & Cas. Co.*, 630 So.2d 759, 763 (La. 1994).  See, also, *Hamilton v. State Farm Fire & Cas. Ins. Co.*, 477 Fed. App'x 162, 165 (5th Cir. 2012)

[46]      *La. Ins. Guar. Ass'n v. Interstate Fire & Cas. Co.*, 630 So.2d at 763.

[47]      *Cadwallader v. Allstate Ins. Co.*, 848 So.2d at 580.  See also *Hamilton v. State Farm Fire & Cas. Ins. Co.*, 477 Fed. App'x at 165.

[48]      *Johnson v. Geovera Spec. Ins. Co.*, 657 Fed. App'x 301, 304 (5th Cir. 2016) (per curiam); *Hamilton v. State Farm Fire & Cas. Ins. Co.*, 477 Fed. App'x at 165-66.

the insurer to obtain the material information it needs from the insured to adequately investigate a claim of loss prior to the commencement of litigation proceedings."[49] Under Louisiana law, an insured's compliance with the provisions of an insurance policy is a condition precedent to recovery.[50] Therefore, an insured's failure to cooperate may be held to be a material breach of the policy and a defense to an insured's lawsuit on the policy.[51] More particularly, an insured's failure to submit to an examination under oath or its refusal to produce requested documentation may violate the policy's cooperation clause.[52] But the cooperation clause is not merely an "escape hatch" that an insurer may use when an insured fails to comply with trivial policy requirements.[53] Instead, a failure to cooperate precludes recovery when the insured engages in a "protracted, willful, and apparently bad faith refusal" to

---

[49] *Hamilton v. State Farm Fire & Cas. Ins. Co.*, 477 Fed. App'x at 166.

[50] *LeBlanc v. Davis*, 254 La. 439, 445-446 (1969); *Lee v. United Fire & Cas. Co.*, 607 So.2d 685, 688 (La. App. 4th Cir. 1992).

[51] *Kerr v. State Farm Fire & Cas. Co.*, 511 Fed. App'x 306, 307 (5th Cir. 2013); *Hamilton v. State Farm Fire & Cas. Ins. Co.*, 477 Fed. App'x at 165; *Lee v. United Fire & Cas. Co.*, 607 So.2d at 688.

[52] See *Kerr v. State Farm Fire & Cas. Co.*, 511 Fed. App'x at 307; *Hamilton v. State Farm Fire & Cas. Ins. Co.*, 477 Fed. App'x at 165; *Mosadegh v. State Farm Fire & Cas. Co.*, No. 07-4427, 2008 WL 4544361 at *3 (E.D. La. Oct. 8, 2008), aff'd 330 Fed. App'x 65 (5th Cir. 2009).

[53] *Kerr v. State Farm Fire & Cas. Co.*, 934 F.Supp.2d 853, 857 (M.D. La. 2012), aff'd, 511 Fed. App'x 306 (5th Cur, 2013) (citing *Jackson v. State Farm Fire & Cas. Co.*, No. 06–7202, 2010 WL 724108, at *8 (E.D. La. Feb. 22, 2010).

comply with a cooperation clause.[54]  Whether the cooperation clause has been breached is a serious matter, and the dismissal of a suit before trial based on the breach of a cooperation clause has been described as a "draconian remedy which [courts] do not favor."[55]

An insurer seeking the dismissal of a lawsuit on a motion for summary judgment based on the insurer's alleged failure to comply with the policy's cooperation clause must meet a heavy burden and clearly demonstrate noncompliance by the insured.[56]  The insurer must demonstrate that it (1) made a diligent effort to obtain the information requested from the insured, and (2) that the failure of the insured to provide such information was both material and prejudicial.[57]  In particular, the burden is on the insurer to prove actual prejudice.[58] Whether an insured breached the duty of cooperation is a factual inquiry.[59]

---

[54]     *Southern Fidelity Ins. Co. v. Martin*, No. 13-0496, 2013 WL 6665579, at *8 (E.D. La. Dec. 17, 2013) (citing *Lee v. United Fire & Cas. Co*., 607 So.2d at 687).

[55]     *Kerr v. State Farm Fire & Cas. Co*., 934 F.Supp.2d at 857-58 (citing *Lee v. United Fire & Cas. Co*., 607 So.2d at 685).

[56]     *Lovett v. State Farm Fire and Casualty, Co*., No. 11-0518, 2012 WL 13059557, at *4 (W.D. La. Nov. 1, 2012) (citing *Jackson v. State Farm Fire & Cas. Co*., 2010 WL 724108 at *8).

[57]     *Lovett v. State Farm Fire and Casualty, Co*., No. 11-0518, 2012 WL 13059557, at *4 (citing *Jackson v. State Farm Fire & Cas. Co*., 2010 WL 724108 at 8).

[58]     *Jackson v. State Farm Fire & Cas. Co*., 2010 WL 724108 at 8 (citing *Trosclair v. CNA Ins. Co*., 637 So.2d 1168, 1170 (La. App. 4 Cir. 1994), writ denied, 642 So.2d 874 (La. 1994)).

[59]     *Breaux v. Cozy Cottages, LLC*, 2014-486 (La. App. 3 Cir. 11/12/14), 151 So.3d 183, 190 (citing *Freyou v. Marquette Cas. Co.*, 149 So.2d 697, 1 (La. App. 3 Cir. 1963), writ refused, 150 So.2d 771 (1963)); *Copelin v. State Farm Ins*., No. 06-4115, 2009 WL 361088, at *5 (E.D. La.

Therefore, a valid dispute concerning whether the insured breached the policy's cooperation clause will preclude summary judgment in the insured's favor.

## D.    <u>Does the Cooperation Clause Apply to the Plaintiff?</u>

At oral argument, the plaintiff argued that the cooperation clause does not apply in this case because Ms. Placencio is seeking UM "benefits" under the insurance policy but is not seeking UM "coverage."  The plaintiff also argued that she was not a party to the insurance contract between Progressive and Genesis and consequently did not owe any contractual duty to Progressive.  These arguments are unpersuasive.

Even though this Court sought supplemental briefing after the parties had already briefed the issues raised in Progressive's motion for summary judgment, these issues were not addressed in the plaintiff's briefing but were raised for the first time at oral argument.  "It is axiomatic that a summary judgment may be rendered or affirmed only as to those issues set forth in the motion under consideration by the court at that time."[60]  The purpose of oral argument is allow the parties a chance to flesh out their existing theories of the case; it is not designed to provide an

---

Feb. 12, 2009) ("Whether a cooperation clause has been breached or not is generally a question of fact that must be determined by the facts and circumstances of each case.")).

[60]     *Lebrun v. Baker Hughes Inc.*, No. 15-01828, 2017 WL 5485371, at *6 (W.D. La. Nov. 14, 2017).

opportunity for a party to present an entirely new theory of the case.[61]  Therefore, "it is patently unfair to consider arguments [first raised] at oral argument that were not fully briefed."[62]  Furthermore, courts generally do not consider contentions raised for the first time at oral argument.[63]  Therefore, because these issues were not raised in any opposition memorandum filed by the plaintiff, these issues are considered waived.[64]

Further, without actually resolving the first issue raised by the plaintiff at oral argument, this Court notes that the argument likely lacks substantive merit.  In numerous cases addressing whether a person can recover damages under the UM provisions of an automobile insurance policy, the Louisiana Supreme Court has referred to "UM coverage."[65]  UM benefits are the amount of damages paid out when

---

[61]     *Quarles v. Helmerich & Payne International Drilling Co.*, No. 16-2038, 2017 WL 2955346, at *2 (E.D. La. June 29, 2017) (citing *United States v. Liggins*, 155 F.Supp.3d 665, 668 (N.D. Miss. 2016)).

[62]     *Quarles v. Helmerich & Payne International Drilling Co.*, 2017 WL 2955346, at *2.

[63]     *Martinez v. Mukasey*, 519 F.3d 532, 545 (5th Cir. 2008); *Mikesha v. City of Galveston*, 451 F.3d 376, 381 (5th Cir. 2006) ("as a general matter we do not address newly minted arguments at oral argument"); *Herrmann Holdings Ltd. v. Lucent Technologies, Inc.*, 302 F.3d 552, 562 n.2 (5th Cir. 2002); *Whitehead v. Food Max of Mississippi, Inc.*, 163 F.3d 265, 270 (5th Cir. 1998).

[64]     See, e.g., *Texas Brine Company, LLC v. Dow Chemical Company*, No. 11-1102 c/w 15-3325, 2018 WL 655692, at *5 (E.D. La. Feb. 1, 2018); *Erfindergemeinschaft UroPep GbR v. Eli Lilly and Company*, No. 2:15-CV-1202-SCB, 2017 WL 275465, at *10 n. 7 (E.D. Tex. Jan. 20, 2017)

[65]     See, e.g., *Green ex rel. Peterson v. Johnson*, 2014-0292 (La. 10/15/14), 149 So.3d 766 (explaining that "[w]hen the existence of UM coverage under a policy of automobile insurance is at issue. . . a two-step analysis [is used]:  (1) the automobile insurance policy is first examined to determine whether UM coverage is contractually provided under the express provisions of the

a person is found to be covered by the UM provision of an insurance policy, and a person must be an insured as that term is defined by the UM provision of an insurance policy in order to have UM coverage and therefore qualify for the recovery of UM benefits.

**E.** **Did the Plaintiff Violate the Cooperation Clause?**

To resolve the pending motion, this Court must determine whether the plaintiff violated the cooperation clause in Progressive's insurance policy. It is undisputed that the relevant insurance policy contains the following provision:

A person seeking coverage must:
1.     cooperate with us in any matter concerning a claim or lawsuit;
2.     provide any written proof of loss we may reasonably require;
3.     allow us to take signed and recorded statements, including sworn statements and examinations under oath, which we may conduct outside the presence of you, a relative, or any person claiming coverage, and answer all reasonable questions we may ask as often as we may reasonably require;
4.     promptly call us to notify us about any claim or lawsuit and send us any and all legal papers relating to any claim or lawsuit;
5.     attend hearings and trials as we require;
6.     submit to medical examinations at our expense by doctors we select as often as we may reasonably require;
7.     authorize us to obtain medical and other records;
8.     take reasonable steps after a loss to protect the insured auto from further loss. . .
9.     allow us to have the damage to an insured auto or other auto involved in an accident or loss inspects and appraised before its repair or disposal; and

policy; (2) if no UM coverage is found under the policy provisions, then the UM statute is applied to determine whether statutory coverage is mandated.").

10.　　authorize us access to your business or personal records as often as we may reasonably require.[66]

It is equally undisputed that Ms. Placencio is "a person seeking coverage" under the policy. Therefore, she was obligated to comply with the provisions of the cooperation clause. However, it is also undisputed that, prior to filing suit, Ms. Placencio did not give a recorded statement, did not agree to be examined under oath, and did not respond to the list of questions posed by Progressive's adjuster. Although the plaintiff advised Progressive that she wished to reserve any UM claim she might have when she was negotiating a settlement of the liability claim, there is no evidence that she advised Progressive that she was seeking to recover UM benefits under the policy that Progressive issued to Genesis until February 2017, or almost a year after the accident occurred. It is common practice for an insurer to insist upon boundaries between its liability adjusters and UM adjusters while claims are being investigated in a dual loss scenario, and it is undisputed that in this case Progressive assigned one set of adjusters to handle the liability claim and a different set of adjusters to handle the UM claim. In an affidavit, Erin Lunn Ricouard, Progressive's Claims Supervisor—Litigation, stated that Progressive's Claims Operating Procedures provide that when an insured has both a third-party liability claim under a Progressive policy and a first-party UM claim under a different

---

[66]　　Rec. Doc. 25-3 at 6.

Progressive policy arising out of the same event, separate Progressive adjusters must handle each claim and the adjusters may not access the medical information submitted in connection with the other claim unless the injured party has executed an authorization permitting them to do so.[67]  The plaintiff's counsel failed to appreciate the significance of the boundary between the two sets of adjusters and opposed Progressive's motion on the basis that the information and documents that she had provided to the liability adjusters should have been available to the UM adjusters and should have precluded her having to provide any further documentation of her injuries or medical treatment.  However, Progressive did not produce a copy of any written procedures establishing the parameters of the boundary between the liability adjusters and the UM adjusters, and Progressive did not explain why the prohibition on the UM adjusters accessing information gathered during the investigation of the liability claim could not be accessed by or shared with the UM adjusters after May 31, 2017 when the liability claim had been settled and the liability lawsuit was dismissed.  Further, Progressive's adjusters were able to access some information regarding the plaintiff's prior claims and the injuries underlying the prior claims.  In its briefing, Progressive stated that "information concerning an insured's prior losses, including general descriptions of claimed

---

[67]    Rec. Doc. 32-1 at 2 (affidavit of Erin Lunn Ricouard); Rec. Doc. 28-1 (unsworn declaration of Belinda Merritt).

bodily injuries, is available in the ISO claims system,"[68] which seems to confirm that the adjusters were able to access at least some information regarding prior claims. On January 19, 2017, liability adjuster Joel Langford sent an e-mail to the plaintiff's counsel, in which he asked if she was aware of the plaintiff's prior injury claim history and prior injury claims,[69] suggesting that he had been able to access such records. On February 2, 2017, Mr. Langford again e-mailed the plaintiff's counsel and this time attached records from the files maintained by Progressive regarding prior losses claimed by the plaintiff.[70] But the documents that were allegedly attached to that e-mail were not placed in the record. Therefore, the record does not establish the precise information that the adjusters were able to access before September 22, 2017 when Ms. Placencio expressly authorized the UM adjusters to access Progressive's records regarding her prior claims.

Accordingly, Progressive has established that it made a diligent effort to obtain the information requested from the insured (particularly as documented in the eight reservation-of-rights letters) and Progressive has established that the information it requested was material because it related to the coverage afforded by the policy, the nature of the injuries allegedly sustained by Ms. Placencio, and the

---

[68]    Rec. Doc. 38 at 1.

[69]    Rec. Doc. 27-6.

[70]    Rec. Doc. 27-9.

amount of damages claimed by Ms. Placencio. But Progressive has not established that the plaintiff's failure to provide the requested information earlier was prejudicial. Whether the information withheld by the plaintiff was prejudicial will depend on what prior claims information Progressive's UM adjusters had access to, particularly in the time period between May 31, 2017 (when the liability lawsuit was dismissed) and September 22, 2017 (when the plaintiff authorized the UM adjusters to access Progressive's records regarding her prior claims, presumably including the liability claim arising from the same accident that gave rise to her UM claim).

Accordingly, this Court finds that genuinely disputed issues of material fact preclude summary judgment in Progressive's favor at this time with regard to the issue of whether the plaintiff violated the cooperation clause set forth in the relevant insurance policy under which she seeks to recover UM benefits.

## E.     The Plaintiff's Claim for Penalties and Attorneys' Fees

Ms. Placencio seeks to recover statutory penalties, damages, and attorneys' fees under La. R.S. 22:1973 and La. R.S. 22:1892, claiming that Progressive failed to timely pay her UM claim after receiving satisfactory proof of loss.[71] La. R.S. 22:1973 imposes a duty of good faith and fair dealing on insurers. Under that statute, the duty of good faith and fair dealing is breached when an insurer fails to pay a

---

[71]     La. R.S. 22:1973 was formerly designated as La. R.S. 22:1220, and La. R.S. 22:1892 was formerly designated as La. R.S. 22:658.

claim within sixty days after receipt of satisfactory proof of loss if the failure to do so is arbitrary, capricious, or without probable cause. When such a breach occurs, penalties may be assessed against the insurer in an amount not to exceed two times the damages sustained by the insured or $5,000, whichever is greater. Proof of actual damages suffered due to the delay in payment to an insured is not a prerequisite to the recovery of penalties for an insurer's breach of its statutory duties,[72] but the insured must prove actual damages to recover any more than the $5,000 penalty.[73] La. R.S. 22:1892(B)(1) requires insurers to make payment within thirty days after receipt of satisfactory proof of loss. If such a failure is found, the insurer is liable for the amount of the insured's loss and shall also be penalized in an amount equal to fifty percent of the insured's damages or $1,000, whichever is greater, plus reasonable attorneys' fees and costs.

Both statutes are penal in nature and must be strictly construed.[74] A plaintiff may be awarded penalties under only one of the two statutes for the same conduct, whichever allows the larger amount of penalties.[75] When Section 1892 is triggered,

---

[72]     *Sultana Corp. v. Jewelers Mut. Ins. Co.*, 2003-0360 (La. 12/03/03), 860 So.2d 1112, 1119.

[73]     *Hannover Corp. of America v. State Farm Mutual Auto. Ins. Co.*, 67 F.3d 70, 76 (5th Cir. 1995); *Oubre v. Louisiana Citizen's Fair Plan*, 2011-0097 (La. 12/16/11), 79 So.3d 987, 1001-02.

[74]     *Reed v. State Farm Mut. Auto. Ins. Co.*, 2003-0107 (La. 10/21/03), 857 So.2d 1012, 1020 (citing *Hart v. Allstate Insurance Company*, 437 So.2d 823, 827 (La.1983)).

[75]     *Calogero v. Safeway Ins. Co. of La.*, 99-1625 (La. 01/19/00), 753 So.2d 170, 174; *Kodrin v. State Farm Fire and Cas. Co.*, 314 Fed. App'x 671, 679 n. 29 (5th Cir. 2009).

an award of attorneys' fees is mandatory.[76]  Attorneys' fees may be awarded under

Section 1892 if penalties are awarded under Section 1973; however, such an award

is discretionary.[77]

To recover under either statute, a plaintiff must prove that more than either

thirty or sixty days elapsed after the submission of a satisfactory proof of claim

without the insurer paying the claim and that the insurer's failure to timely pay the

claim was arbitrary, capricious, or without probable cause.  In this case, there is a

genuinely disputed issue of material fact concerning whether the plaintiff submitted

a satisfactory proof of claim, but the plaintiff cannot prove that Progressive's actions

were in bad faith.

"One who claims entitlement to penalties and attorney fees has the burden of

proving the insurer received satisfactory proof of loss as a predicate to a showing

that the insurer was arbitrary, capricious, or without probable cause."[78]   A

satisfactory proof of loss is that which is sufficient to fully apprise the insurer of the

insured's claim.[79]  To establish a satisfactory proof of loss with regard to a UM claim,

---

[76]     *Calogero v. Safeway Ins. Co. of La.*, 753 So.2d at 174.

[77]     *Calogero v. Safeway Ins. Co. of La.*, 753 So.2d at 174.

[78]     *Reed v. State Farm Mut. Auto. Ins. Co.*, 857 So.2d at 1020.

[79]     *McDill v. Utica Mut. Ins. Co.*, 475 So.2d 1085, 1089 (La. 1985); *Hart v. Allstate Ins. Co.*, 437 So.2d 823, 828 (La. 1983).

the insured must establish that the insurer received sufficient facts which fully apprise the insurer that (1) the owner or operator of the other vehicle involved in the accident was uninsured or underinsured; (2) that he was at fault; (3) that such fault gave rise to damages; and (4) establish the extent of those damages.[80]  An insurer's actions are "arbitrary and capricious" when its willful refusal of a claim is not based on a good faith defense,[81] or is unreasonable or without probable cause.[82]  When the insurer has legitimate doubts about coverage, however, the insurer has the right to litigate the claim without being subjected to damages and penalties.[83]  "The statutory penalties are inappropriate when the insurer has a reasonable basis to defend the claim and acts in good-faith reliance on that defense."[84]

In this case, Ms. Placencio has not satisfied her burden of proof.  Although she argued that she provided Progressive's liability adjusters with evidence establishing that she was injured in the subject motor vehicle accident and incurred

---

[80]     *McDill v. Utica Mut. Ins. Co.*, 475 So.2d 1085, 1089 (La. 1985); *Hart v. Allstate Ins. Co.*, 437 So.2d 823, 828 (La. 1983).

[81]     *Calogero v. Safeway Ins. Co. of La.*, 753 So.2d at 173 (citing *Louisiana Maintenance Servs., Inc. v. Certain Underwriters at Lloyd's of London*, 616 So.2d 1250, 1253 (La. 1993)).

[82]     *Calogero v. Safeway Ins. Co. of La.*, 753 So.2d at 173 (citing *Darby v. Safeco Ins. Co.*, 545 So.2d 1022, 1029 (La. 1989)).

[83]     *Calogero v. Safeway Ins. Co. of La.*, 753 So.2d at 173 (citing *Darby v. Safeco Ins. Co.*, 545 So.2d at 1029)).

[84]     *Reed v. State Farm Mut. Auto. Ins. Co.*, 857 So.2d at 1021.

medical expenses for the treatment of those injuries, there is no evidence in the record establishing that she provided proof of her injuries or treatment or any other information concerning her claim to the UM adjusters between the date of the accident in March 2016 and September 2017. The plaintiff through her counsel waited until almost a year after the accident before advising Progressive that she had a UM claim under the policy issued to Genesis in addition to her liability claim under the policy issued to Ms. Savoy. Between February and September 2017 – a period of some eight months – Ms. Placencio's counsel prevented her client from giving a recorded statement, failed to answer the written questions posed by Progressive, failed to provide completely filled out medical authorization forms signed by the plaintiff and covering a time period preceding the accident, failed to provide employment records, failed to allow the plaintiff to give an examination under oath, and failed to provide copies of the treatment notes and bills for medical services related to the injuries the plaintiff claims to have sustained in the motor vehicle accident. Progressive contends that its UM adjusters were precluded from obtaining medical information from its liability adjusters without the consent of the insured, and Ms. Placencio did not give her consent for the UM adjusters to obtain information from the liability file until September 22, 2017. She filed suit against Progressive a week later. Thus, the plaintiff did not establish that she provided Progressive with a satisfactory proof of loss before she filed suit or that she gave

them a sufficient amount of time to review that information and decide whether a payment would be tendered.

The earliest date on which the plaintiff might have provided a satisfactory proof of loss was September 22, 2017 when she provided medical authorization forms and consented to have the UM adjusters access the records from her prior claims against Progressive. Therefore, Ms. Placencio did not allow Progressive a thirty-day or sixty-day time period in which to review the information and decide whether to pay her claim. Instead, she filed suit only seven days later, without affording ample time for Progressive to review the records and evaluate whether she was entitled to UM coverage and benefits. Therefore, Ms. Placencio did not establish that Progressive was arbitrary, capricious, or without probable cause in failing to timely pay UM benefits, and Ms. Placencio is not entitled to recover under either good faith statute.

Furthermore, a plaintiff who possesses information that would suffice as satisfactory proof of loss but does not relay that information to the insurer is not entitled to a finding that the insurer was arbitrary, capricious, or without probable cause in failing to pay the claim.[85] Ms. Placencio claims that she had information constituting satisfactory proof of her claim and that she had previously submitted

---

[85] *Reed v. State Farm Mut. Auto. Ins. Co.*, 857 So.2d at 1021.

that information to Progressive through its liability adjusters. But when Progressive's UM adjusters requested that she submit that information to them, Ms. Placencio declined to do so. Assuming without deciding that all necessary information had already been submitted to the liability adjusters, Ms. Placencio could have avoided this dispute by submitting the requested information to the UM adjusters. Her failure to do so precludes a finding that Progressive acted arbitrarily, capriciously, or without probable cause in failing to pay her claim.

Progressive contends that there are coverage issues that cannot be resolved until it obtains certain information from the plaintiff. Thus, Progressive contends that it has legitimate doubts about coverage. On February 23, 2017, Progressive sent the plaintiff a list of thirteen questions, asking about topics related to coverage under the policy, and there is no evidence that those questions were ever answered by the plaintiff. In such a situation, when a legitimate issue concerning coverage exists, there is no basis for the imposition of bad faith penalties.

Although the motion now before this Court is Progressive's motion for summary judgment, this is a situation in which the issue raised by Progressive is not one on which it will bear the burden of proof at trial. Therefore, to prevail on its motion, Progressive need only point out the plaintiff's failure to prove the elements of her claim. The plaintiff failed to prove that she submitted satisfactory proof of her UM claim, and she failed to prove that Progressive's actions were arbitrary,

capricious, or without probable cause. Therefore, the plaintiff is not entitled to recover penalties, costs, or attorneys' fees under either good faith statute. Accordingly, to the extent that the plaintiff seeks to recover under La. R.S. 22:1973 and La. R.S. 22:1892, Progressive's motion for summary judgment is granted, and the plaintiff's bad faith claim is dismissed with prejudice.

## Conclusion

For the foregoing reasons, the motion for summary judgment filed by defendant Progressive Paloverde Insurance Company (Rec. Doc. 25) is GRANTED IN PART and DENIED IN PART. The motion is denied with regard to Progressive's contention that the plaintiff breached the terms of the commercial automobile insurance policy issued to Genesis Learning Center, LLC by failing to cooperate with Progressive's investigation of the claim. The motion is granted with regard to the plaintiff's claim that Progressive acted in bad faith in failing to timely pay sums owed under the policy, and that claim is dismissed with prejudice.

Signed at Lafayette, Louisiana on January 28, 2019.

_____
PATRICK J. HANNA
UNITED STATES MAGISTRATE JUDGE